On Rehearing.
LOTTINGER, Judge.
This suit was instituted in the Eighteenth Judicial District Court, Parish of West Baton Rouge, Louisiana, where the Court awarded judgment in favor of petitioner. On recent appeal to this Court, we affirmed the judgment of the Lower Court, our opinion in said matter not yet having been reported. Defendant has asked for a rehearing, which has been granted.
Briefly, the facts show that defendant issued petitioner a Surgical, Medical and Hospital Insurance Policy which was on October 15, 1952. On June 10, 1953, while the policy was in force, the petitioner developed a “Diaphragmatic hernia” which required surgery. The petitioner applied for payment of benefits under the policy, but was refused because of the following provision in the policy:
“Article IV. — Waiting Periods:
“Twelve (12) consecutive months of continuous membership under this certificate is required before L.P.S. will assume liability for payment of surgery or medical services, or hospital care for pre-existing conditions, tonsils, adenoids, hemorrhoids, and hernia.”
The policy was actually written by Louisiana Physicians Service, Inc., but the defendant has assumed all liability under the said policy.
Four doctors testified either on trial below or by depositions. Three of the said doctors stated that a diaphragmatic hernia was a protrusion through the upper wall of the abdomen, and such was a true hernia. One of the doctors testifying for petitioner testified that diaphragmatic hernia was not one of the types of hernias which passes, through a part of the abdominal wall, however, the evidence shows that his testimony-only considered the front of the abdomen, as the abdominal wall. All of the doctors, testified that the most common hernia was-the type which protruded through the front,, or anterior, abdominal wall, however, in medical terminology, a diaphragmatic hernia, which protruded through the upper-wall was a true hernia. The medical experts agreed that the layman’s common conception of the term hernia was a protrusion, through the front abdominal wall.
Our original opinion was based on. Article 1957 of the LSA-Civil Code, together with certain decisions of the Courts of other jurisdictions. Article 1957 of the-LSA-Civil Code provides as follows:
“In a doubtful case the agreement is interpreted against him who has contracted the obligation.”
After reconsidering the matter, it is our-opinion that the provisions of Article 1957' would apply to an ordinary ambiguous, contract, however, we do- not believe that such would apply to the present case as. there is no such ambiguity present.
The policy under consideration must, by-its nature, contain many technical terms.. In fact the actual policy which was filed in-evidence contains many words and phrases, which would be of no meaning whatsoever to the layman. It is obvious that said policy-was written by persons well versed in medical terms, and who might be considered experts in that field.
The only question before us is the interpretation of the medical term “hernia,” and1 whether said term includes “diaphragmatic-hernia.” The medical testimony in the record shows that “diaphragmatic hernia” is a> true hernia.
Article 15 of the LSA-Civil Code provides :
*793 “Art or technical terms — interpretation — Terms of art or technical terms and phrases, are to be interpreted according to their received meaning and acceptation with the learned in the art, trade ■ or profession to which they refer.”
Article 1947 of the LSA-Civil Code provides:
“Terms of art — technical phrases— construction — -Terms of art or technical phrases are to be interpreted according to their received meaning with those who profess the art or profession to which they belong.”
Now there is no question that the word “hernia” is a technical medical phrase, and for a true and correct definition of the term we must refer to those who are experts in the medical profession. Such men, who testified in this case, were of the opinion that the term “hernia” includes several conditions, or ailments, of which diaphragmatic hernia is one. In Maryland Casualty Co. v. New Orleans Cotton Seed Oil & Mfg. Co., 3 Orleans App. 285, the Court ■stated:
“Words occurring in a contract are to be construed in their ordinary, usual and popular sense, unless they have been given a contrary legal construction, or have acquired a distinct commercial meaning by usage or are peculiar to some art, trade, or science and have thereby acquired a technical meaning, or unless it is apparent from the context that distinct and particular meaning was intended.”’
We feel that the term “hernia” is of such a nature as to bring it within the provisions of Articles 15 and 1947 of the LSA-Civil Code, and that a true definition of the term must be given by members of the medical profession. According to the testimony of the distinguished doctors and the, provisions of said Articles 15 and 1947, we therefore hold that “diaphragmatic hernia” is a true hernia and was excluded from coverage under the policy for the first year.
Furthermore it appears to us that if the framers of this contract had intended to exclude from coverage, for the first year, only an inguinal hernia, which is the most frequent type, they would have so stated. All to the contrary however they used a very comprehensive term when they used the word “hernia” in said exclusion as that term would be inclusive of many types of hernias such as inguinal hernia, femoral hernia, umbilical hernia, epigastric hernia and diaphragmatic hernia.
For the reasons herein assigned, the judgment rendered by us in this matter is annulled, and the judgment rendered by the Lower Court is reversed, and there is hereby entered judgment in favor of defendant and against petitioner, dismissing petitioner’s demand. All costs are to be paid by petitioner.
Judgment reversed.